AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
12/12/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MMC___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
12/12/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___KL___ DEPUTY

United States of America

v.

Isaias Acevedo De La Virgen,

Defendant(s)

Case No.  2:24-MJ-07344-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 29, 2024 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Trenton Shaffer, Special Agent
*Complainant's signature*

Trenton Shaffer, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: December 12, 2024

*Alicia G. Rosenberg*
*Judge's signature*

City and state: Los Angeles, California

Hon. Alicia G. Rosenberg, U.S. Magistrate Judge
*Printed name and title*

AUSA: Cameron C. Vanderwall (x0647)

**AFFIDAVIT**

I, Trenton Shaffer, being duly sworn, declare and state as follows:

## I. **PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint and arrest warrant against Isaias DE LA VIRGEN ("DE LA VIRGEN") for a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. **BACKGROUND OF AFFIANT**

3. I am currently a Special Agent with the Drug Enforcement Agency ("DEA"), and have been so employed since March 2020. I am currently assigned to the Ventura Resident Office ("VRO") of the DEA. Before my current assignment, I was assigned to the Los Angeles Field Division ("LAFD") Financial Investigation Group. I attended the DEA Academy in Quantico, Virginia for approximately four months between October 2019 and February 2020.

4. During the course of my employment, I have received comprehensive, formal instruction on such topics as drug identification; money laundering techniques; patterns of drug trafficking; complex conspiracies; the exploitation of narcotics traffickers' telecommunications devices; criminal law; surveillance; and other investigative techniques. I have initiated and assisted in investigations into the unlawful importation, manufacture, possession with intent to distribute, and distribution of narcotics (including cocaine, fentanyl, and methamphetamine), the laundering of narcotics proceeds, and conspiracies associated with narcotics offenses. In conducting these investigations, I have utilized a variety of investigative techniques and resources, including but not limited to such techniques as surveillance, confidential sources, and search warrants.

5. I have received several hundred hours of training in various investigative techniques, including specialized training in the recognizing and processing of drugs, the methods and means of drug dealers, drug packaging, drug paraphernalia and terminology, drug prices, field testing of drugs, interview and interrogation techniques, surveillance techniques, undercover operations, confidential source management, and other investigative techniques. I have participated in investigations involving the possession, manufacture, distribution, and importation of drugs, methods used to finance drug transactions, methods of distribution, and movement of drug proceeds. I am familiar with drug traffickers' methods of operations, including

the distribution, storage, and transportation of drugs and the collection of drug proceeds.  I am also familiar with methods employed by drug trafficking organizations to evade detection by law enforcement, involving cellular telephone technology, mobile applications, electronic messenger/messaging systems, voice over internet phone technology, counter surveillance, encrypted devices, and coded communications.

6.   During my employment with DEA, I use a variety of investigative techniques while conducting investigations, including debriefing defendants and informants who have personal knowledge regarding drug-trafficking organizations and the methods in which these organizations operate.  I have also participated in various aspects of these investigations as both a case agent and in a supportive role, including making and directing controlled drug purchases, conducting physical and electronic surveillance, using informants and cooperating sources, executing search warrants, executing arrest warrants, participating in consensual searches, and installing and utilizing electronic recording devices.

### III. SUMMARY OF PROBABLE CAUSE

7.   Based on my investigation in this case, review of investigation reports, and debriefings with law enforcement officers, I am aware that on August 8, 2024, Ventura Police Department ("VPD") detectives and DEA VRO agents executed a state search warrant at DE LA VIRGEN's residence in Oxnard, CA ("TARGET RESIDENCE"). DE LA VIRGEN was present at the TARGET RESIDENCE at the time of the execution of the search warrant.

During a <u>Mirandized</u> interview, DE LA VIRGEN directed VPD detectives to a bag in the garage of the TARGET RESIDENCE and suggested it contained illegal narcotics. Upon searching the garage pursuant to the warrant, law enforcement recovered a bag containing approximately 762 grams of fentanyl, 1,043 gross grams of suspected cocaine, and 124 gross grams of suspected methamphetamine.

### IV. STATEMENT OF PROBABLE CAUSE

8.  Based on my review of law enforcement reports and search warrants, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.  Background of Investigation**

9.  In May 2024, a confidential informant working with VPD ("CI1")[1] met with VPD detectives to provide information on a suspected fentanyl dealer in the Ventura area (co-conspirator 1). VPD detectives subsequently arranged a controlled drug purchase between CI1 and co-conspirator 1 in June 2024, during which CI1 purchased usage amounts of fentanyl from co-conspirator 1.

10. Based on this controlled sale, on or about July 3, 2024, VPD detectives obtained and executed a California state

---

[1] CI1's criminal history includes prior convictions for possession of drug paraphernalia, under the influence of a controlled substance, providing false information to law enforcement, possession for sales of methamphetamine, petty theft, misdemeanor burglary and transportation of a controlled substance. CI1 agreed to assist the VPD Street Crimes Unit in exchange for leniency on a pending criminal matter. CI1 had also provided reliable information in previous investigations.

search warrant at co-conspirator 1's residence in Oxnard, CA. During the execution of the search warrant, law enforcement recovered approximately 26 grams of fentanyl, 54 grams of methamphetamine, and a variety of narcotic distribution paraphernalia (including drug packaging material, operable digital scales, and a "pay/owe" sheet). Law enforcement arrested co-conspirator 1 for possession for sales of narcotics.

    11. Later that month, a second confidential informant ("CI2")[2] notified VPD detectives that he/she associates with several people in the Ventura area who are engaged in the sales and trafficking of methamphetamine and fentanyl. Specifically, CI2 told detectives that he/she would be driving a man (co-conspirator 2) to pick up narcotics from co-conspirator 1 at co-conspirator 1's residence on July 31, 2024. Based on this information, on July 31, 2024, VPD detectives conducted surveillance of CI2's vehicle. The detectives observed the vehicle first stop to pick co-conspirator 1 up before driving to the TARGET RESIDENCE. At the TARGET RESIDENCE, CI2 and the person CI2 described as co-conspirator 2 sat in the car while co-conspirator 1 walked up the driveway and entered the TARGET RESIDENCE. Approximately fifteen minutes later, VPD detectives observed co-conspirator 1 exit the TARGET RESIDENCE and get back into the car. Using this information, VPD detectives obtained and executed a search warrant on co-conspirator 2 and recovered

---

[2] CI2's criminal history includes prior arrests for possession of a controlled substance for sales, petty theft with priors, and burglary. CI2 agreed to provide information to law enforcement officers for monetary compensation.

approximately 13.5 grams of fentanyl, narcotics packaging materials, and operable digital scales. Law enforcement arrested co-conspirator 2 for possession for sales of narcotics.

### B. Law Enforcement Identify DE LA VIRGEN as Source of Narcotics

12. On or about August 8, 2024, VPD detectives conducted surveillance in the vicinity of the TARGET RESIDENCE and saw a vehicle parked in front of the house that they had previously observed at the TARGET RESIDENCE during the July 31, 2024 narcotics transaction. Detectives ran a vehicle search and identified DE LA VIRGEN's son as the vehicle's registered owner. That same day, during their surveillance of the TARGET RESIDENCE, law enforcement saw the vehicle drive past them and followed it to an apartment complex where a man, later identified as DE LA VIRGEN, exited the complex and opened the driver-side door of the vehicle. Law enforcement confirmed that the man who opened the vehicle's driver-side door was DE LA VIRGEN by comparing a previous booking photo of DE LA VIRGEN to the man they saw and confirming both had the same tattoos.

13. Continuing their investigation into DE LA VIRGEN, detectives discovered that co-conspirator 1 had two phone numbers -- one ending in 7286 and one ending in 3492 -- saved in his phone as "Cabeza Somis."[3] Law enforcement identified the number ending in 7286 as belonging to DE LA VIRGEN by searching it in one of their databases and discovering that it was

---

[3] Law enforcement seized co-conspirator 1's two cellphones during the execution of the search warrant at his residence on July 3, 2024, and searched them pursuant to the July 3, 2024 warrant.

associated with previous utility bills paid by DE LA VIRGEN. VPD detectives also discovered that co-conspirator 1 made a call to DE LA VIRGEN approximately 35 minutes before arriving back to his residence on July 3, 2024. Detectives also identified that co-conspirator 1's phone had been in the immediate vicinity of the TARGET RESIDENCE approximately 23 times over the course of the two weeks prior to the July 3, 2024 search warrant, including the day before.

14. On August 9, 2024, VPD detectives conducted further surveillance at the TARGET RESIDENCE and observed DE LA VIRGEN arrive in a 2020 White GMC Sierra and enter the TARGET RESIDENCE.

   C.   **Law Enforcement Execute a Search Warrant at DE LA VIRGEN's Residence and Arrest Him**

15. On August 20, 2024, VPD detectives obtained a California state search warrant for the TARGET RESIDENCE, DE LA VIRGEN's person, and DE LA VIRGEN's vehicles.

16. In anticipation of executing the search warrant, on August 29, 2024, VPD detectives and DEA VRO agents conducted surveillance at the TARGET RESIDENCE. During the surveillance, law enforcement saw DE LA VIRGEN leave the TARGET RESIDENCE, enter one of his vehicles, and drive away. VPD detectives proceeded to conduct a traffic stop and detained DE LA VIRGEN.

17. After pulling DE LA VIRGEN over and detaining him, VPD Detective Garza explained that law enforcement had obtained a search warrant for DE LA VIRGEN's person, house, and residence and read DE LA VIRGEN his Miranda rights, which DE LA VIRGEN

acknowledged he understood. After <u>Mirandizing</u> DE LA VIRGEN, Detective Garza asked him if law enforcement would find anything related to the narcotics listed in the search warrant in the TARGET RESIDENCE. DE LA VIRGEN responded that they would, "in the garage," and further indicated that they were "right there in the bag on the floor." Detective Garza asked DE LA VIRGEN what, specifically, law enforcement would find inside of the bag and DE LA VIRGEN stated, "you'll find out." Detective Garza also asked whether DE LA VIRGEN's girlfriend had any responsibility for the contents of the bag in the garage, to which DE LA VIRGEN replied "no, it's all me."

     18. Law enforcement then executed the search warrant at the TARGET RESIDENCE. Located inside of a bag in the garage -- just as DE LA VIRGEN described -- law enforcement recovered approximately 762 grams of fentanyl, as confirmed by the DEA Southwest Laboratory. Law enforcement also recovered 1,043 gross grams of suspected cocaine—based off of its appearance and scent—and 124 gross grams of suspected methamphetamine, as confirmed by field tests. Law enforcement also recovered narcotics packaging material and an operable digital scale in the same garage.

//
//
//
//

## V. CONCLUSION

19. For all of the reasons described above, there is probable cause to believe that Isaias DE LA VIRGEN has committed a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 12th day of December 2024.

_____
THE HONORABLE ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE